Respondent-appellant Thomas L. Fouty (hereinafter "father") appeals the November 7, 2000 Findings of Fact and Conclusions of Law entered by the Guernsey County Court of Common Pleas, Juvenile Division, granting permanent custody of his minor children, Corey, Austin, and Joshua, to petitioner-appellee Guernsey County Children's Services Board (hereinafter "GCCSB"), and finding it was in the best interests of the children to do so.
 STATEMENT OF THE FACTS AND CASE
On December 22, 1999, GCCSB filed a complaint in the Guernsey County Court of Common Pleas, Juvenile Division, alleging Angel Daniel (DOB 10/5/83),[1] Corey Fouty (DOB 8/16/92), Austin Fouty (DOB 2/1/94), and Joshua Fouty (DOB 8/12/95) were abused, neglected, and dependent children. The allegations were based upon information obtained when a GCCSB emergency worker was called to father's home by the Cambridge Police Department after father had been arrested on charges of domestic violence relative to Angel, possession of drug paraphernalia, and child endangering. The children disclosed to the emergency worker father was physically abusive, biting them, hitting them with a board, and choking them. Additionally, the children disclosed to a relative they had been exposed to pornographic material and observed father participate in drug abuse.
The boys were initially placed with their maternal grandparents, however, temporary custody of the children was transferred to GCCSB due to the grandparents' inability to continue to provide care to the children. Father was incarcerated in the Guernsey County jail at this time. The trial court conducted an adjudicatory hearing on March 20, 2000, at which time father admitted the allegations of dependency. At the dispositional hearing held immediately after the adjudicatory hearing, the trial court ordered temporary custody of the children remain with GCCSB. The trial court conducted a further dispositional hearing on July 5, 2000, at which time it ordered no other action be taken in the matter.
On July 26, 2000, GCCSB filed a Motion to Modify Dispositional Order/Motion for Permanent Custody. The trial court conducted a hearing on the permanent custody motion on October 3, 2000. Following the hearing, on October 11, 2000, the guardian ad litem for the children submitted his written report. Via Findings of Fact and Conclusions of Law filed November 7, 2000, the trial court granted permanent of Corey, Austin, and Joshua Fouty to GCCSB, and terminated all of father's parental rights and responsibilities.
It is from this entry father prosecutes his appeal, raising the following assignments of error:
 I. THE COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY AND TERMINATING THE PARENTAL RIGHTS OF THOMAS L. FOUTY.
 II. THE COURT ERRED IN EXCLUDING FROM EVIDENCE A LETTER WHICH WAS IDENTIFIED BY THOMAS FOUTY AS ONE HE FOUND IN THE ROOM OF ANGEL DANIEL AND AS BEING WRITTEN IN HER HANDWRITING.
Any other facts relative to our discussion of father's assignments of error shall be contained therein.
This case comes to us on the accelerated calender. App.R. 11.1, which governs accelerated calender cases, provides, in pertinent part:
(E) Determination and judgment on appeal.
The appeal will be determined as provided by App.R. 11.
 1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form.
 The decision may be by judgment entry in which case it will not be published in any form.
This appeal shall be considered in accordance with the aforementioned rule.
 I
In his first assignment of error, father contends the trial court erred in granting permanent custody of the children to GCCSB, and terminating his parental rights. Specifically, father asserts the decision of the trial court that the children should not be placed with father was not supported by clear and convincing evidence, and the trial court failed to make adequate findings to support its determination the grant of permanent custody was in the best interests of the children.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
The relevant statute is R.C. 2151.414, which provides, in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; * * *
In determining the best interest of a child, R.C. 2151.414(D) states:
 (D) * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
However, a best interest determination, standing alone, is not sufficient to grant permanent custody of a child to an agency and divest parents of their parental rights.
 (E) In determining at a hearing held pursuant to division (A) of this section . . . whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with the parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
(16) Any other factor the court considers relevant.
We find the trial court's finding it was in Corey's, Austin's, and Joshua's best interests to grant permanent custody to GCCSB was not against the manifest weight of the evidence. Our review of the record indicates sufficient evidence was presented to support the trial court's decision.
Dr. Nicholas Dubbling of Six County, Inc., a mental health facility, testified regarding the facility's involvement with father. Father had had several intakes at the facility dating back to 1996. Treatment records from father's adolescence were also on file. Through the course of his most recent treatment with Six County, father was diagnosed as having a substance induced mood disorder as well as an antisocial personality disorder. Dr. Dubbling explained the diagnosis indicated, i.e., substance induced mood disorder, was long term, and was aggravated by stress. The Six County records also established father had a poor history of compliance with recommended treatment and had excessive no shows and cancellations of appointments.
Scotti Mesarchik, a licensed social worker with Thompkins Child and Adolescent Services, testified she had counseled all three of the Fouty children. Mesarchik stated both Corey and Austin are AD-HD and are on medication for their conditions. Corey suffers from adjustment problems, including rudeness and disrespect toward authority. Since his placement in foster care, Austin's behavior has improved. Mesarchik recalled Austin's relating father would lock him in the basement with the lights turned off. Since being in foster care, Corey's aggressive behavior continues; he uses foul language, teaches Joshua bad words, and displays sexual inappropriateness. With respect to Joshua, Mesarchik testified she has not done a lot of individual counseling with him because a speech impediment makes it difficult for her to work with him on a one on one basis.
Additionally, Mesarchik saw father on two occasions for individual sessions and two occasions for sessions with the children. Although father admitted he had a difficult time in the past being a single dad and raising three kids, he did not offer specific information. Father minimalized the effect of his drug use on his ability to care for the children. Mesarchik noted father has a limited support system, which concerned her.
Angel Daniel, father's stepsister, testified she has lived with father and his ex-wife temporarily after Corey was born, and moved in again in 1995, following the death of Angel and father's mother. Angel stated the first time she observed father physically abuse Corey was when the child was approximately two months old. She explained father would hit Corey across the face any time the child cried. Angel observed father bite the ears of Corey and Austin. Angel recalled, on at least one occasion, father bit Corey's ears until they bled. Angel further noted father's hitting, shaking, and choking of the children were not isolated incidents. Angel also testified the children were exposed to homosexual pornography. Angel remembered a time when Corey walked in on father and his boyfriend engaged in sexual activity. Father also used illegal drugs, including crack cocaine and marijuana, in front of the children.
Father testified on his own behalf. He disputed the testimony of Angel, but admitted he had made some mistakes relative to the children, in particular, failing to place the children's needs first and using drugs. On cross examination, father admitted he left the children in the care of Skip Randalls while he vacationed with his boyfriend for a week in the Spring of 1999, despite the fact father had been molested by Randalls when he was a minor and knew Randalls had sexually molested his brother when he was a minor. When asked by the court why he would trust Randalls with his children, father responded, "Honestly I didn't think he would do that to them." T. at 172. The trial court pressed father, asking why he would think that when Randalls molested him and his brother. Father merely answered, "I don't know." Id. The trial court persisted and again asked why father did not think Randalls would molest his children. Father stated he was a teenager at the time Randalls molested him and assumed Randalls liked teenagers rather than children. Father also stated the children enjoyed seeing Randalls and Randalls was good to the children.
In light of the evidence set forth herein and the entire record in this matter, we find the trial court's decision to grant permanent custody of the Fouty children to GCCSB was not against the manifest weight of the evidence.
In this assignment of error, father further argues the trial court failed to make adequate findings to support its determination permanent custody was in the best interests of the children. Father maintains the trial court failed to make findings of fact which support its consideration of the factors set forth in R.C. 2151.414(D); specifically, the trial court's failure to consider the wishes of the children as required by R.C. 2151.414(D)(2). In support of his position, father relies upon this Court's decision in In re: Kevon Mays (May 17, 1999), Stark App. No. 98CA0293, unreported. We do not read the Mays
decision as requiring a trial court to explicitly state its findings with respect to each of the factors in R.C. 2151.414(D). There is nothing in the record to indicate the trial court did not consider the wishes of the children in making its determination.
Father's first assignment of error is overruled.
 II
In his second assignment of error, father argues the trial court erred in refusing to admit into evidence a letter allegedly written by Angel Daniel (hereinafter "Exhibit 2").
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.State v. Adams (1980), 62 Ohio St.2d 151, 157.
Given Angel Daniel's testimony Exhibit 2 was not her handwriting, we find the trial court did not abuse its discretion in excluding Exhibit 2 from evidence. Assuming, arguendo, the trial court erred in excluding Exhibit 2, we find such error to be harmless as Angel Daniel was extensively cross examined regarding the content of Exhibit 2, her reasons to lie about father, and the similarity of her own thoughts with those expressed in Exhibit 2.
Fathers second assignment of error is overruled.
The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.
 _____________________ Hoffman, J.
Edwards, P.J. and Wise, J. concur
[1] Angel Daniel is father's stepsister. She resided with father and his children during the time of the allegations.